E. M. FREELS v. FLOYD E. HAUN and THE CITY NATIONAL BANK.

Eastern Section. December 14, 1929.

Petition for Certiorari denied by Supreme Court, June 28, 1930.

534

Fowler & Fowler, of Knoxville, for the Bank.

Ray H. Jenkins, of Knoxville, for Freels.

PORTRUM, J. The complainant, E. M. Freels, instituted this suit in the chancery court against Floyd E. Haun, former cashier, and the City National Bank, of Knoxville, seeking a recovery on two notes, one of which was dated October 13, 1924, in the principal sum of $2200, due one year after date, payable to the order of the complainant Freels, and purported to have been made and executed by N. B. Kuhlman, and which is endorsed on the back: ''City National Bank by F. E. Haun, Cashier.'' The other one bears date of September 23, 1924, in the principal sum of $600, due one year after date, and payable to the order of the City National Bank, and purported to have been executed by R. B. Sweetman and Emma Sweetman, and bearing an endorsement on its back: ''City National Bank by F. E. Haun, Cashier.''

The complainant seeks to recover interest on the $2200 note from April 13, 1928, and on the $600 note from March 23, 1928, and also attorney's fees provided for in the face of the note.

The complainant avers that the two notes represented actual money that he paid to the defendants Haun and the City National Bank, and that said defendants received said sums of money as consideration for the notes so endorsed to him.

After the bill was filed, the defendant Haun was adjudged a bankrupt and thereafter the suit was prosecuted against the City National Bank alone. The complainant amended the bill to charge in substance that he took $2800 to the City National Bank and to Haun in his capacity as the cashier of the bank, dealing with Haun as cashier and not individually, and the said $2800 represented money which complainant left at the City National Bank through Haun as its cashier and accepted by the bank, and the bank accepting money from time to time for deposit or investment through its cashier, had sold and endorsed other notes of a similar nature to the complainant and had always paid the interest on the notes; that the bank held its cashier out to the public and to the complainant as having unrestricted authority to transact its business and the complainant knew of no limitations on the authority. That the transactions between the complainant and the cashier of the bank were carried on openly, in the presence of others in the bank, during banking hours, and there was nothing to put the complainant on notice that the transactions were irregular and the bank authorized and ratified the acts of its cashier from time to time whenever he exceeded his authority and that said bank was negligent in not exercising any control or supervision over

the cashier and thus clothing him with apparent authority to commit frauds and unauthorized acts upon the public.

The prayer of the bill was amended to pray an alternative in case of the denial or recovery on the notes, that a judgment be awarded against the bank for money had and received.

The defendant bank in its answer takes the position that if such transactions as those described in the original bill took place, then in that event the complainant was dealing with its cashier Haun individually and not in his capacity as cashier. The defendant bank by its answer neither admits or denies that the names of Kuhlman or Sweetman as the makers are forgeries, but demands strict proof of the same, and denies that it received any consideration for said notes amounting to $2800.

The pertinent facts are that the complainant, Freels, a man sixty-one years of age, living in Roane county, Tennessee, is shown to be the owner and holder of the two notes sued on and had received the said notes from the City National Bank, through its cashier; that he bought the notes from the City National Bank through the cashier and had had dealings with the cashier for a long time but that he never dealt with him individually. When he received the $2200 note, he turned over to the bank some other notes, bearing similar endorsements, and $500 in cash. He said he never purchased a note at discount, but always paid the full value of the notes, so when he made the transaction in question, he delivered to the bank $500 in cash and the balance in notes which he had formerly purchased from the cashier as the notes of the bank and endorsed by the cashier in the name of the bank, and the interest on these notes had always been paid when due. When these notes became due, they were renewed, and he files a letter, written on the letterhead of the said City National Bank and signed by Haun as cashier in which Haun sent him, in the regular course of the mails, the renewal of the two notes. He further states that he had no knowledge that the notes were forgeries, but purchased them on the strength of the endorsement of the City National Bank, through its cashier. It appears that the cashier forged one of the notes, if not the other (since the makers of the other were unknown), and had been guilty of defrauding the bank and of misappropriating money. The president testified that Haun had many times made loans of money in violation of the rules of the bank and the unauthorized acts were later approved by the president and board of directors. The City National Bank had great confidence in its cashier Haun, and held him out to the public as a man of integrity and worthy of the public's respect and confidence, by inserting advertisements in the newspapers containing a human interest story of Haun's life and his picture, and inviting the public to confer with Haun about their financial difficulties. Notwithstanding these ad-

vertisements, it is admitted that Haun did things that were extraordinary and the bank had condoned and confirmed Haun's actions. It is now admitted by the president that Haun committed perjury in reference to these particular notes in not reporting them to the comptroller as liabilities of the bank in his report, as he was required to do by law. It is not denied that the complainant brought $2800 into the City National Bank and counted it out on Haun's desk. The bank shows by the report of the auditor that these particular notes were never entered upon the records of the bank.

It is insisted by way of defense that the acts of Haun were unauthorized and illegal and that he was not within his power, either apparent or actual, in carrying on his dealings with Freels and had no authority, expressed or implied, to negotiate the bank's negotiable paper, if by any theory the paper could in law be held to be the paper of the bank.

On the trial of the case the Chancellor was of the opinion that the bank was liable upon its endorsement upon the $600 note, since Freels dealt with the cashier as an officer of the bank, and parted with his money upon the faith of the endorsement upon the back of the note.

He held, however, that Freels was not entitled to recover the $2200 note, for the reason that the note was made payable to him as the payee by Kuhlman, the maker, and the endorsement of the bank on the back thereof was of such a character, taken with the face of the note, as to put Freels upon notice that the bank signed the note as the accommodation endorser of Kuhlman and, since national banks have no authority to become accommodation endorsers of another, no liability exists against the bank. From this decree both the bank and Freels have appealed to this court.

We will deal first with the assignment of error touching the $600 note. It is insisted that this note is a forgery, but the bank endorsed it and under the Negotiable Instrument Law guaranteed the genuineness of the signature of the maker, so the question of forgery is not a defense available to an endorser who has negotiated the note for value. No plea of non est factum was filed.

It is next insisted that it is not within the ordinary and usual course of business for a banking institution to rediscount or sell negotiable paper to individuals. And the act of Haun in negotiating this instrument was without his actual or apparent authority and passed no interest or right to the purchaser. It appears from the proof that this is not the custom of this or any other bank in Knoxville and, therefore, the negotiation to an individual of the bank's negotiable papers was unusual. Authority is produced supporting the proposition that the bank is not liable for the acts of its officers when the acts exceed the authority defined by law and by custom. However, these authorities, which we find it unnecessary to review, are not in

point, for the reason that the Banking Law, defining the functions of a national bank, sets out the functions and powers of a national banking institution, to-wit:

"To exercise by its board of directors subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt, by receiving deposits; . . ." Revised Statutes, Section 5136.

Another section of the National Banking Law, as above stated, requires the cashier to enter in his report to the comptroller all notes purchased and negotiated by the bank. While it may be unusual for the bank, as well as other banks in Knoxville, to negotiate promissory notes belonging to the bank to individuals as an investment, yet it appears to us to be within the express powers conferred upon it by Congress, and there is no escape from liability on its endorsement on the theory that it was not the custom. If it had the power to negotiate its papers, it could only make a transfer through its officers, and Freels had the right to rely upon the authority of the cashier to enter the endorsement. There was no error in the decree of the Chancellor awarding the judgment upon the $600 note.

The Chancellor was of the opinion no liability existed upon the $2200 note because the bank appeared upon the same as an accommodation endorser, since the note was made payable to Freels and executed by Kuhlman and the note itself was sufficient to put Freels upon notice of the accommodation endorsement of the bank. This question turns upon whether the bank was in fact an accommodation endorser or a surety. An accommodation endorser is defined under the Negotiable Instrument Law, Acts 1899, Chapter 94, Section 29, Shannon's Annotated Code 3156A37:

"Accommodation party defined; his liability.—An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

Certainly the bank did not endorse the note with the intent of lending its name to the maker, Kuhlman, and without receiving value therefor; and it cannot be said to be an accommodation endorser. It held the note, through its cashier, as its individual property, and endorsed and delivered the note only upon the payment to it of the face of the note. The transaction, if authorized, certainly was not one made for the accommodation of Kuhlman or for any one; the cashier did not consider it so and neither did Freels, for he turned over the money to the bank for the note, relying upon the endorsement

of the bank, and made no inquiry of Kuhlman or had no dealings with him in reference to the transaction. The fact that the note was made payable to Freels does not materially alter the matter in view of the circumstance that Freels had previously conferred with the cashier in reference to purchasing notes from him, and the cashier represented that he had made the loan to Kuhlman, contemplating the note would be transferred to Freels. We see nothing in this transaction to put Freels upon notice of the fraudulent conduct of the cashier. He had a right to rely upon the endorsement of the bank, and the fact that his name appeared on the note makes it none the less the property of the bank than if the payee had been a fictitious person.

Section 24 of the Act, Shannon's Code 3516A32:

"Presumption of consideration of parties for value.—Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

Freels, seeing this endorsement upon the note by the bank, had a right to assume the bank was in fact "a party thereto for value." Since the endorsement was not an accommodation endorsement, the bank necessarily must have signed in the capacity of maker or an endorser for value. The facts show that it negotiated the paper to one who took it upon the faith of its endorsement and who parted with full consideration. Under the banking act, it had authority to negotiate and discount promissory notes, and it follows the bank was liable upon the endorsement.

The judgment of the Chancellor will be reversed to the extent of allowing a recovery on both notes for the principal, interest and attorney's fees. In other respects, it is affirmed, at the cost of the defendant below.

Snodgrass and Thompson, JJ., concur.